**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**Richard Bird, d.b.a.** , et al.,

      Plaintiffs,

vs.                                          Case No. 04-CV-661
                                              Judge Gregory L. Frost
**Raymond Delacruz**, et al.,              Magistrate Judge King

      Defendants.

<u>**ORDER**</u>

This matter is before the Court for consideration of a Motion to Dismiss Plaintiffs'

Second Amended Complaint filed by Defendant Carteret Mortgage Corporation ("Carteret")

(Doc. # 68). Plaintiffs Richard and Valerie Bird ("Plaintiffs") filed a memorandum in opposition

(Doc. # 93), to which Carteret responded (Doc. # 94).  For the reasons that follow, the Court

**GRANTS** the motion.  (Doc. # 68).

**BACKGROUND**

For purposes of ruling on the instant motion, the Court accepts as true all well-pleaded

facts as set forth in Plaintiffs' Second Amended Complaint.  (Doc. # 63).

Because the number of parties involved in this action is quite large, a brief description of

each proves helpful at the outset.  Plaintiffs are husband and wife who reside in Franklin County,

Ohio.  *Id.* at ¶ 5.  Defendant Ray Delacruz ("Delacruz") operates several businesses and owns

property in Ohio.  *Id.* at ¶ 6.   Delacruz acted as a go-between for Plaintiffs and sellers of rental

properties.  *Id.* at ¶ 18.  Defendant Laura Atkinson ("Atkinson") was an assistant to Delacruz

1

who appraised the properties Plaintiffs bought through Delacruz.[1]  *Id.* at ¶ 7.  Defendant David

Munce ("Munce") is an Ohio resident who sold Plaintiffs rental properties through Delacruz.  *Id.*

at ¶ 8.  Defendant Erin O'Keefe-Nehring ("O'Keefe-Nehring") was the closing agent for the

majority of the properties at issue.  *Id.* at ¶ 9.  O'Keefe-Nehring is also an Ohio resident.  *Id.*

Defendant Donald Green ("Green") is an Ohio resident who managed the properties Plaintiffs

purchased.  *Id.* at ¶ 10.

Plaintiffs' Second Amended Complaint also names three companies as Defendants.

Defendant Conestoga Title Agency of Ohio, Inc. d.b.a. AmeriTitle ("Conestoga"), is a title

company that served as the settlement agent for each of the properties Plaintiffs purchased

through Delacruz.  *Id.* at ¶ 11.  Defendant DDC Property Management, Inc. ("DDC") is an Ohio

corporation principally owned and controlled by Delacruz.[2]  *Id.* at ¶ 12.  Finally, Defendant

Carteret Mortgage Corporation ("Carteret") is a mortgage company "affiliated with . . . Delacruz

and Conestoga."  *Id.* at ¶ 13.

Essentially, Plaintiffs allege that they were victims of an illegal real property flipping

scheme - illegal  because Defendants allegedly employed fraud in order to induce Plaintiffs to

buy a total of twenty-three (23) residential rental properties based on inflated appraisals.  *Id.* at

intro.  Plaintiffs first became aware of the properties through a newspaper advertisement that

appeared in the Columbus Dispatch in mid-December 2001.  *Id.* at ¶ 14.  The advertisement read

as follows:

---

[1] The Clerk entered Delacruz and Atkinson in default on May 2, 2005.  (Doc. # 102).

[2] The Clerk entered DDC in default on May 2, 2005. (Doc. # 102).

2:04-cv-00661-GLF-NMK Doc #: 110 Filed: 07/06/05 Page: 3 of 12 PAGEID #: 748

> 45 Rentals to be sold in one unit.  No money down, owner fin. Cash out. $23,116 gross rent, $14,940 payment @ 7 %.  A+ credit only. $100,000 per year extra income.  Call 679-7238 or email Dublin317@aol.com.

*Id.* at ¶ 15.  The Second Amended Complaint does not state who placed the advertisement.

The advertisement piqued Plaintiffs' interest and they utilized the contact information.[3] Atkinson responded to Plaintiffs several days later via e-mail.  *Id.* at ¶ 16.  Her e-mail listed forty-five (45) rental properties and their associated rents.  *Id.*  The e-mail further stated that Plaintiffs could not inspect the properties and that owner financing would be available only to those whose credit met the standards of the owners.  *Id.*  Plaintiffs provided the financial information that Atkinson's e-mail requested and subsequently learned that they had qualified for financing.  *Id.* at 17.

In January 2002, Plaintiffs met with Delacruz in person.  *Id.* at ¶ 18.  Delacruz, who was not a real estate agent, informed Plaintiffs that he was a "middle man" who worked with sellers who wanted to sell properties in blocks to "free up cash."  *Id.* at ¶¶ 18, 20.  Later that month, Delacruz sent Plaintiffs an e-mail that identified six (6) additional potential properties for sale.  *Id.* at ¶ 22.

All told, between February 2002 and March 2002, Plaintiffs bought nine (9) properties from Green and twelve (12) from Munce after learning of the properties through Delacruz.  *Id.* at ¶ 24, 62.  Plaintiffs allege that Green and Munce had actually first sold those properties to Delacruz, who then "flipped" the properties to Plaintiffs based on inflated appraisals completed by Atkinson.  *Id.* at ¶¶ 7, 134.  Delacruz did not inform Plaintiffs of his relationship with Green

---

[3] The Second Amended Complaint does not state whether the Plaintiffs used the telephone or e-mail to respond to the advertisement.

and Munce. *Id.* at 21. Because the appraisals were inflated, Plaintiffs assert that they overpaid for the properties. *See id.* at ¶¶ 29, 43, 46, 85, 95.

Conestoga was the settlement agent for the properties at issue. *Id.* at ¶ 131. Conestoga allegedly purposely excluded the sellers' names from the HUD-1 Settlement Statements when it should have known from the deeds that Green and Munce had previously sold the properties to Delacruz. *Id.* at ¶¶ 132-34. Additionally, Plaintiffs allege that Conestoga and Delacruz provided Plaintiffs with Settlement Statements having "different payoff amounts and payees than those . . . it provided to the purported sellers on the same days and for the same properties." *Id.* at ¶ 137.

Delacruz and Atkinson allegedly received appraisal fees for the properties that Plaintiffs purchased and "were agents for their principal, Conestoga." *Id.* at ¶ 135. Plaintiffs therefore appear to allege that Conestoga gave Delacruz and Atkinson the appraisal fees. Moreover, Plaintiffs allege that Carteret "routinely received payment from Conestoga and/or Delacruz based upon fraudulent settlement statements." *Id.* at ¶ 136. Plaintiffs also assert that Delacruz and Atkinson were agents of Carteret. *Id.* at ¶ 185.

After Plaintiffs closed on the properties, they learned that many of the tenants were paying less rent than had been represented to Plaintiffs. *Id.* at ¶¶ 59, 68, 83. Additionally, Plaintiffs allege that Defendants failed to disclose that many of the properties needed substantial repairs. *Id.* at ¶¶ 76, 84, 97. Plaintiffs therefore had to spend money to fix the problems. *Id.* at ¶¶ 93, 100.

In their Second Amended Complaint, Plaintiffs assert that: (1) the Defendants violated and conspired to violate both federal and state RICO statutes; (2) the Defendants committed

fraud; (3) the Defendants breached the contracts of sale of the Green and Munce properties; (4) the Defendants were unjustly enriched; (5) Delacruz and Conestoga breached their fiduciary duties; (6) Delacruz violated Ohio's Mortgage Broker Registration Act; and (7) Conestoga and Carteret are vicariously liable for the acts of their agents, Atkinson and Delacruz. *Id.* at ¶¶ 145 - 185.

Carteret now moves to dismiss all of Plaintiffs' claims against it, arguing that Plaintiffs fail to adequately state a claim upon which relief can be granted for vicarious liability and that Plaintiffs' Second Amended Complaint fails to comport with Fed. R. Civ. P. 9, which requires Plaintiffs to plead fraud with particularity. (Doc. # 68). The Court now proceeds to an examination of Carteret's motion.

## DISCUSSION

Plaintiffs assert that Carteret: (1) is affiliated with Delacruz and Conestoga; (2) received payment from Conestoga and / or Delacruz based upon fraudulent Settlement Statements, and (3) is vicariously liable for the acts of its agents, Delacruz and Atkinson. (Doc. # 63 at ¶¶ 13, 136, 185).

## I. FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Carteret first asserts that Plaintiffs' fraud claims against it must fail because they are based on unsupported allegations of agency. Thus, the Court must ascertain whether the Plaintiffs have adequately pleaded agency.

### A. STANDARD

Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' "

*Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), *cert. denied*, 520 U.S. 1251 (1997)).   The focus is therefore not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). In making such a determination, a court must " 'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.' "  *Sistrunk*, 99 F.3d at 197 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)).  A court need not, however, accept conclusions of law or unwarranted inferences of fact.  *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003).

**B.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

In essence, Carteret argues that because Plaintiffs' Second Amended Complaint contains bare legal assertions that Delacruz and Atkinson were Carteret's agents, and that Carteret was affiliated with Conestoga without alleging any factual predicate, Plaintiffs have failed to state a claim upon which relief can be granted.  (Doc. # 68 at 11).  In response, Plaintiffs posit that the Second Amended Complaint avers that the actions of Delacruz should be imputed to Carteret "on account of the business relationship."  (Doc. # 93 at 3).  It is unclear to which business relationship the Plaintiffs refer - the alleged relationship between Conestoga and Carteret, or the alleged agency relationship between Delacruz and Conestoga.

Plaintiffs' Second Amended Complaint states that Carteret is affiliated with Delacruz and

Conestoga; routinely received money from Delacruz and / or Conestoga; and is vicariously liable

for the acts of its agents, Delacruz and Atkinson. (Doc. # 63 at ¶ ¶ 13, 136, 185). Plaintiffs'

recitation of the definitions of "agency" and "affiliated" in their memorandum in opposition does

not alter the fact that their Second Amended Complaint fails to set forth any groundwork for

those allegations. A number of federal district courts have held "'[a] complaint relying on

agency must plead facts which, if proved, could establish the existence of an agency relationship.

It is insufficient to merely plead the legal conclusions of agency.'" *Gunderson v. ADM Investor*

*Servs., Inc.*, 85 F. Supp. 2d 892, 905 (N.D. Iowa 2000) (citing *Williams v. Ford Motor Co.*, 990

F. Supp. 551, 554 (N.D. Ill. 1997)); *accord Nuevo Mundo Holdings v. PriceWaterhouseCoopers*

*LLP,* 2004 WL 112948, at * 6 (S.D. NY 2004); *Lachmund v. ADM Investor Servs., Inc.*, 26 F.

Supp. 2d 1107, 1114 (N.D. Ind. 1998) (holding that legal conclusion that partner in business was

the agent of another company was insufficient allegation of agency); *MJ & Partners Restaurant*

*Ltd. Partnership v. Zadikoff*, 10 F. Supp. 2d 922, 931 (N.D. Ill. 1998) ("While the existence and

extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an

agency relationship existed in order for his complaint to survive a Rule 12(b)(6) motion to

dismiss."); (holding that pleading containing conclusory allegations of agency was insufficient);

*Fenner & Smith, Inc.*, 798 F. Supp. 1427, 1432 (D. Neb. 1992) (holding that "bald" allegation of

agency "is by itself a mere legal conclusion and is therefore insufficient to withstand a motion to

dismiss."). Instead, Plaintiffs must plead sufficient facts to establish an agency relationship.

*Cohen v. Standard Bank Inv. Corp. Ltd.*, 1998 WL 782024, at *6 (S.D.N.Y. 1998); *Allied Prods.*

*Corp. v. Electric & Gas Tech., Inc.*, 1998 U.S. Dist. LEXIS 4923, at *7 (N.D. Ill. 1998) (holding

a claimant must plead facts that would support a finding that the alleged agents had actual or

apparent authority to act on behalf of another); *Balderos v. City Chevrolet, Buick & Geo, Inc.*, 1998 WL 155912, at *6-7 (N.D. Ill. 1998); *Toms v. Delta Savs. & Loan Ass'n*, 124 N.E.2d 123, 125-127 (Ohio 1955).

Plaintiffs neglected to plead sufficient facts to establish an agency relationship existed between Carteret and Conestoga as well as between Carteret and Delacruz or Carteret and Atkinson. For example, Plaintiffs fail to allege that Delacruz or Atkinson were employees of Carteret. Plaintiffs also neglect to assert that Carteret paid Delacruz or Atkinson, or that they had actual or apparent authority to act on Carteret's behalf. The same holds true for Carteret and Conestoga. Accordingly, because Plaintiffs' RICO and fraud claims against Carteret are based on agency, the Court **GRANTS** Carteret's motion to dismiss those claims. (Doc. # 68; Doc. # 93 at 6).

## II.  PLEADING FRAUD WITH PARTICULARITY

Plaintiffs' claims sound in RICO.[4] A RICO claim is based on a "pattern of racketeering activity" arising from fraud, and Federal Rule of Civil Procedure 9(b) requires that all fraud claims must be pleaded with particularity. *Brightman v. Freeway Assoc.*, 1991 U.S. App. LEXIS 19069 (6th Cir. 1991). Accordingly, Carteret alternatively argues that dismissal is warranted under Fed. R. Civ. P. 9 because Plaintiffs failed to plead their fraud claims with the requisite particularity. (Doc. # 68 at 6-14). Unsurprisingly, Plaintiffs maintain that their Second Amended Complaint adequately alleges fraud. (Doc. # 93 at 4-6).

---

[4] Because Ohio's RICO statute is directly adopted from the federal RICO statute, the Court addresses Plaintiffs' federal and state RICO claims concurrently. *Universal Coach, Inc. v. N.Y.C. Transit Auth.*, 629 N.E. 2d 28, 32 (1993).

A.    STANDARD

Where, as here, Plaintiffs allege mail and wire fraud as predicate offenses for a RICO

violation, their complaint must satisfy Fed. R. Civ. P. 9(b).  According to that rule, in a

complaint alleging fraud "the circumstances constituting fraud . . . shall be stated with

particularity." *See Advocacy Organization for Patients and Providers v. Auto Club Insurance

Assoc.*, 176 F.3d 315, 322 (6th Cir. 1999).  In Rule 9(b) cases, the Sixth Circuit considers the

particularity requirement against the more general policy stated in Fed. R. Civ. P. 8 which favors

simple, concise and direct allegations in pleading. *Michaels Building Co. v. Ameritrust Co., N.A.*,

848 F.2d 674 (6th Cir. 1988).  In other words, the Sixth Circuit has explained that "the purpose

undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of

the substance of a plaintiff's claim in order that the defendant may prepare a responsive

pleading." *Id.* at 679; *see also American Town Center v. Hall 83 Associates*, 912 F.2d 104 (6th

Cir. 1990). "Fair notice" requires at minimum that a plaintiff allege "the time, place and contents

of the misrepresentation(s) upon which he relied." *Brightman v. Freeway Assoc.*, 1991 U.S.

App. LEXIS 19069, at * * 6-7 (6th Cir. 1991) (citing *Bender v. Southland Corp.*, 749 F.2d 1205,

1216 (6th Cir. 1984)).

B.    PLAINTIFFS' ALLEGATIONS OF FRAUD ARE INSUFFICIENT

To prove a RICO violation, Plaintiffs must show: 1) that there were two or more

predicate offenses; 2) the existence of an enterprise engaged in or affecting interstate or foreign

commerce; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an

injury to his business or property by reason of the above.  *Frank v. D'Ambrosi*, 4 F.3d 1378,

1385 (6th Cir. 1993).

In keeping with this Court's holding that mail and wire fraud constitute predicate offenses under RICO, Plaintiffs allege mail and wire fraud.  (Doc. # 63 at ¶¶ 139, 142, 144, 146, 148);  *Bryant v. Bigelow*, 311 F. Supp. 2d 666, 671 (S.D. Ohio 2004).  Mail and wire fraud are proven by showing a scheme or artifice to defraud combined with either a mailing or an electronic communication for the purpose of executing the scheme.  *Vandenbroeck v. Commonpoint Mortgage Co., et al.*, 210 F.3d 696, 701 (6th Cir. 2000). A "scheme to defraud" is defined as "intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end." *Id.* at 701 (citing *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389-90 (6th Cir. 1996)). Simply stated, in order to present a cognizable claim for fraud, the Plaintiffs must show that Defendants made a material misrepresentation of fact that was calculated or intended to deceive persons of reasonable prudence and comprehension, and must also show that Plaintiffs in fact relied upon that material misrepresentation. *See Kenty*, 92 F.3d at 390.  Alternatively, Plaintiffs may allege an omission on which they relied to establish a scheme to defraud.  *Id.*

"Loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do. Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 802 (W.D. Tenn. 2005) (citing *Jepson Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994)).  Furthermore, those details "are mandated not only by Rule 9(b), but by the very nature of a RICO claim. For without an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to

10

determine whether or not a pattern of racketeering activity has been established." *Jepson, Inc.*, 34 F.3d at 1328.

The Court has reviewed Plaintiffs' Second Amended Complaint and holds that Plaintiffs' vague allegations that Defendants used "the US mails, electronic mails and newspapers" to find interested investors and used "interstate telephone calls, wire transfers and national banks" to conduct their business are insufficient under *Bender* and *Brightman*. The time, place, content, and parties to those supposed communications are not alleged. In addition, Plaintiffs fail to assert that any of those communications contained a false statement of fact upon which they relied. "It is well-established that a victim of fraudulent scheme cannot assert a RICO claim absent evidence that the defendants made misrepresentations to the victim and the victim relied upon those misrepresentations." *Carr v. Ciminio*, 2001 WL 1471759, at *7 (N.D. OH 2001). The Court therefore **GRANTS** Carteret's motion to dismiss Plaintiffs' RICO and fraud claims against it under Fed. R. Civ. P. 9.

## III.    UNJUST ENRICHMENT

Lastly, Plaintiffs assert a claim for unjust enrichment by alleging that "Carteret routinely received payment from Conestoga and/or Delacruz based upon fraudulent Settlement Statements." (Doc. # 63 ¶ 136). Carteret moves to dismiss this claim as well, arguing that Carteret was not unjustly enriched. (Doc. # 68 at 21).

The elements of unjust enrichment are: (1) a benefit conferred on defendant by plaintiff; 2) defendant's knowledge of the benefit; and 3) defendant's retention of the benefit under circumstances where it would be unjust to retain the benefit without payment. *Andersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 837 (S.D. Ohio 2002) (citing *Hambleton v. R.G. Barry Corp.*,

11

12 Ohio St. 3d 179, 183 (1984)).

Carteret is correct that Plaintiffs' Second Amended Complaint fails to allege that Carteret "knew about the supposed scheme to defraud the Plaintiffs, that Carteret encouraged the scheme or that Carteret was involved in making any misrepresentation to Plaintiffs." (Doc. # 68 at 16). Furthermore, Plaintiffs' Second Amended Complaint fails to allege that Carteret "knew it was receiving money it was not entitled to receive." (Doc. # 94 at 8). Consequently, the Court **GRANTS** Carteret's motion to dismiss Plaintiffs' unjust enrichment claim against it, to the extent it remains after the Court's rulings above. (Doc. # 68).

## CONCLUSION

Carteret's motion to dismiss (Doc. # 68) is **GRANTED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**


 /s/  Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

12